254·P.2d 622]

[Civ. No. 4604.   Fourth Dist.   Mar. 25, 1953.]

W. A. SCRIBNER, Appellant, v. J. E. CARRELL, Respondent.

(1)

Francis L. Smee for Appellant.

Crowe, Mitchell & Hurlbutt for Respondent.

BARNARD, P. J.—On December 14, 1950, the plaintiff leased 75 acres of land to the defendant for one year beginning February 1, 1951, and ending January 31, 1952. The lease provided that the rental was to be $5,250 and acknowledged that $3,750 had been paid when the lease was signed. It then provided that the balance of $1,500 "shall be due and payable upon lessor's completion of repairs to the well and pumping plant which will guarantee lessee sufficient water for the proper irrigation of said demised premises. . . . It is hereby agreed that the above well and pump work upon which hinges the payment of said Fifteen Hundred ($1500.00) and no/100 Dollars balance shall be completed by Lessor by February 15, 1951." Admittedly, the lessee was not given possession until February 13, 1951, and the repairs to the well and pumping plant were not completed until April 8, 1951. A demand for the payment of the $1,500 was later made and refused. A notice was served on July 10, 1951, demanding payment of the $1,500 within three days or possession of the premises. This action was filed on July 20, 1951, asking judgment for restitution of the premises; for the sum of $1,500; and that the amount found due be trebled because of defendant's wilful and deliberate refusal to pay said rent or surrender possession.

The complaint set forth the lease, including the provisions above mentioned, and alleged that the defendant received possession of the premises on February 13, 1951. It then alleged that the provision of the lease requiring the completion of the well and pump work by February 15, 1951, as above quoted, was "altered and modified by an executed oral agreement" entered into on or about February 15, 1951; that by the terms of this oral agreement the defendant agreed to give the plaintiff an extension of time in which to complete the repairs to the well and pumping plant, and to pay the $1,500 upon completion of the repairs in accordance with the oral agreement; that the defendant promised to give

the plaintiff additional time in which to complete the repairs either up until the defendant was ready to start his "preirrigation" for a cotton crop, or up to the time he had completed his preirrigation and before he was ready to commence his summer irrigation; that as a consideration for the oral agreement the plaintiff agreed to use his best efforts to complete the repairs before the "preirrigation" was desired, and that if more water was desired for preirrigation he would arrange to use the pumping plant of a Mr. Rising, an adjoining owner, the defendant to pay the fuel cost and the plaintiff to pay the rent for the use of that pumping plant; that as a further consideration the plaintiff, during the latter part of February, 1951, signed a waiver of his rent balance for the purpose of subordinating his rent claim to the lien of a crop mortgage to enable the defendant to get a "budget loan" from a bank; that pursuant to said oral agreement the plaintiff started the repairs on April 3, and completed them on or about April 8, 1951; that pursuant to said oral agreement water was used from Mr. Rising's pumping plant on the 8th, 9th and 10th days of April, 1951; and that the defendant paid the fuel cost and the plaintiff paid the other costs in connection therewith. The answer, among other things, denied all of the allegations of the complaint with respect to the making of an executed oral agreement, and denied that any amount was due to the plaintiff.

So far as material here, the court found that this lease was executed on December 14, 1950, and contained the provisions above quoted; that the defendant went into possession pursuant to the written lease on or about February 13, 1951; that it was not true that the provision of the written lease respecting the time at which the well and pump work should be completed was altered or modified by any executed oral agreement; that it was not true that the plaintiff gave the defendant any consideration for any executed or unexecuted oral agreement altering or modifying the terms of the written lease; that the plaintiff had failed to perform his obligations under the written lease in that he failed to let the defendant into the possession of the premises on February 1, 1951, notwithstanding the request of the defendant for such possession, and in that he failed to complete the repairs to the well and pumping plant by February 15, 1951, as provided for in the written lease; that it is not true that the defendant waived performance of these terms and conditions in accordance with the written lease; and that it is not true

that the sum of $1,500 is due to the plaintiff. Judgment was entered in favor of the defendant and the plaintiff has appealed.

The appellant first contends that the provisions of the lease calling for the payment of the $1,500 balance upon the completion of repairs to the well and pumping plant, and that this repair work upon which the payment of $1,500 hinges "shall" be completed by February 15, 1951, are ambiguous, and that the court erred in preventing him from showing the true intent of the parties in this regard at the time the lease was signed. It is argued that these provisions are ambiguous in that a question exists as to whether they mean that the $1,500 was not to be paid if the work was not done by February 15, 1951, or whether they mean simply that the $1,500 would not be due until the work was actually completed, and that if it was not completed by February 15, the respondent would have an action for any actual damage caused by the delay.

Early in the trial the appellant was asked by his counsel as to whether he had had any conversation with the respondent prior to the execution of the lease with respect to "the intended making of any well and pump repairs on this property." An objection was made on the grounds that no ambiguity or mistake in the terms embodied in the written agreement had been pleaded; that there was no allegation of any oral agreement prior to the written agreement which might affect it; that any prior oral agreement was merged in the written agreement; and that evidence of any such prior oral agreement was not admissible for the purpose of varying the terms of the written agreement. This objection was sustained. It is argued that the exclusion of such evidence was error and was prejudicial since the excluded evidence would have shown that the true agreement of the parties, although ambiguously expressed, was that the respondent would pay the $1,500 upon completion of the well and pump repairs, whether or not they were completed by February 15, 1951, and that if the repairs were not completed by that date the respondent would have an action for damages for any loss resulting from the delay.

No mistake or imperfection in the written lease was put in issue by the pleadings. We see no ambiguity in the provisions in question which would call for or justify the sort of evidence which the appellant contends should have been admitted. The lease provided not only that the $1,500

should be due when the necessary repairs to the well and pumping plant were completed but also that the repair work, upon which the payment of the $1,500 "hinges," was to be completed by February 15, 1951. The land was to be put in cotton and an adequate supply of water for irrigation was a necessity. The rental was large, $70 an acre for agricultural land, and it was natural and reasonable for the parties to provide in the contract for holding back a substantial part of the rent until an adequate water supply was assured, and to fix with certainty a date when the contemplated repairs must be completed. The respondent needed the water at the proper times in order to make a crop, and it would be most unusual for him to have given the appellant an unlimited time in which to make the repairs, and to rely on the uncertainties of a damage action in the event the repairs were not completed in time to enable him to make a crop. It is suggestive that the appellant did not claim in his pleading that he was permitted to make the repairs whenever he chose, but insisted in his pleading and in trying the case that the terms of the lease had been modified or altered by a subsequent oral agreement. The written lease provides that the work "shall" be done by a certain date, and that the payment of $1,500 "hinges" upon the completion of the repairs by that date, and the appellant had two months after the execution of the lease in which to make such repairs. The appellant was bound by his contract and the matter sought to be proved would have resulted in an entirely different contract. No reversible error appears in this connection.

The appellant contends that the court erred in limiting his examination of the respondent under section 2055 of the Code of Civil Procedure in three respects. In the first instance, the respondent had testified in response to questions that water had been obtained from Mr. Rising's pump for a three-day period about April 8th, and that he had paid for the fuel used in the Rising pump during that period. He was then asked whether this was not what he had agreed to do "in your oral agreement entered into with Mr. Scribner about the 15th of February," and why he paid for the fuel. Objections to these questions were sustained, and it is argued that this prevented the appellant from showing that the respondent had requested the use of the Rising pump. In the second instance, the respondent had testified that at his request the appellant signed a waiver,

referring to the waiver in favor of the bank above referred to. He was then asked whether this did not enable him to get a loan from the bank, and an objection to the question was sustained. It is argued that the appellant was thus prevented from showing that the signing of this waiver enabled the respondent to get the loan. In the third instance the respondent was asked if he had not become angry and cursed the appellant when asked to pay the $1,500, and an objection was sustained. It is argued that the appellant was thus prevented from showing that the respondent's detention of the premises was wilful, deliberate and malicious, in support of the claim for treble damages.

These matters were of little importance unless the existence of an executed oral contract following the written contract was established. When the second of these questions was asked the court stated that it rested upon an assumption of a fact that was not proved; that there was a written contract here; that the real question was as to whether or not there was an executed oral contract which altered the written contract; and that "so far there has been no agreement about anything as far as I can see." The respondent had testified positively that he had not, on or about February 15 or at any other time, ever promised or told the appellant that he could have additional time in which to repair the pumping plant, and had never at any time told the appellant that he would pay the balance of the rent as soon as the appellant made the repairs. The appellant's testimony on this matter was indefinite and unsatisfactory and was brought out only after his counsel asked him some 25 or 30 questions. He finally testified that the sum and substance of the oral agreement he claimed was made on February 15 was to the effect that the respondent had agreed to give him all the time he wanted or needed to fix the pump, that no time for doing so was fixed, and that the respondent had agreed to pay the $1,500 whenever the pump was fixed. The appellant also testified that his talk with the respondent about the waiver in favor of the bank was some two weeks after February 15, when it is claimed the oral agreement was made. This waiver was the one usually required and given where a grower receives a loan secured by a cotton crop. It could hardly have been a consideration for the making of an oral agreement some two weeks before. The fact that the respondent may have found it advisable to get additional water could not be controlling. In connection with the third of

these incidents it was stipulated that the appellant had intentionally refused to pay the $1,500, on the advice of counsel, because of the fact that it was not required by the written lease. It clearly appears that the appellant was holding possession of the property and refusing to pay on a claim of right under the lease, and not because of any malice. The court's finding that there was no later oral executed agreement is amply sustained by the evidence, and it clearly appears that none of the rejected evidence here in question could have affected the result.

It also appears, without conflict, that possession of the land was not given to the respondent on February 1, as agreed, because a potato crop grown on the land the previous year had not been harvested; that the appellant had a share interest in that crop; that the respondent asked the appellant for possession of the land on February 1; and that the appellant then told the respondent that he would have to wait until they could dig the potatoes.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.